IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:11-cv-01671-WJM-MJW

BRIAN DEMAESTRI

Plaintiff,

v.

ASSET ACCEPTANCE CAPITAL CORP.,

Defendant.

---

## PLAINTIFF BRIAN DEMAESTRI'S, MOTION FOR SUMMARY JUDGMENT

---

COMES NOW Brian DeMaestri (the "Plaintiff"), for its Motion for Summary

Judgment ("Motion"), stating as follows:

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCiv.R 7.1

The undersigned certifies that, pursuant to D.C.COLO.LCivR 7.1A, the

undersigned believes conferral with Defendant on a Motion for Summary Judgment

would be an act in futility.

Plaintiff Brian DeMaestri is not an attorney and as such respectfully requests the

Court grant him some latitude and leeway for any mistakes, imperfections or

technicalities in his pleadings. In *Puckett v. Cox*, *(456 F2d 233 (1972 Sixth Circuit*

*USCA)*, it was held that a pro-se pleading requires less stringent reading than one drafted

by a lawyer. Also, See *Hulsey v. Ownes 63 F3d 354 (5th Cir 1995)*, *See*, *Hall v. Bellmon*

*935 F.2d 1106 (10th Cir. 1991)*.

## INTRODUCTION

Plaintiff filed a Complaint in this matter on June 27, 2011. See, Docket No. 1. Plaintiff then filed a First Amended Complaint on July 14, 2011. See, Docket No. 6. Plaintiff then sought leave and filed a Second Amended Complaint. See, Docket No. 24. Plaintiff's Second Amended Complaint alleges Defendant violated the Fair Credit Reporting Act ("FCRA"), specifically, 15 U.S.C. §1681b(f) – Counts I and II, as well as the Fair Debt Collection Practices Act ("FDCPA"), specifically, 15 U.S.C. §§1692e(10) and f – Count III. See, Plaintiff's Second Amended Complaint, pgs. 2 and 3. The violations are based on Defendant inquiring into Plaintiff's consumer report from Experian on October 30, 2010, and again on December 24, 2010. See, Plaintiff's Second Amended Complaint, pg. 2, ¶¶8-10. In addition, Plaintiff alleges Defendant inquired into his consumer credit report with Trans Union in November 2010. See, Plaintiff's Second Amended Complaint, pg. 2, ¶¶11-12. Defendant filed a Motion for Summary Judgment on October 24, 2011. See, Docket Entry No. 30 (Defendant's "Motion"). Plaintiff filed his Response to Defendant's Motion for Summary Judgment on October 27, 2011. See, Docket No. 33 (Plaintiff's "Response"). Defendant filed its Reply to Plaintiff's Response for on November 9, 2011. See, Docket No. 34 (Defendant's "Reply").

Defendant alleges, "Plaintiff's conclusory statements do not support a violation by Defendant". However, Defendant's own Admissions, Declarations, Motion and Reply on the record, do in fact establish a violation of the FCRA and FDCPA by Defendant.

Defendant's Admissions, Declarations, Motion and Reply establish the facts it relies upon to attempt to establish a "permissible purpose" to obtain Plaintiff's consumer reports. However, Defendant's Admissions, Declarations, Motion and Reply conversely

prove, in fact, that it did not have a statutorily enumerated "permissible purpose" to obtain Plaintiff's consumer reports. As such Defendant has openly admitted to its alleged violations, confirming Plaintiff's allegations and showing that there is no genuine issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment does not require the moving party to negate its opponent's claim. NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 235 (7th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Rather, the summary judgment standard mirrors the directed verdict standard under Fed. R. Civ. P. 50(a), which requires the court to grant a directed verdict where "there can be but one reasonable conclusion". Esdale v. American Mut. Ins. Co., 914 F. Supp. 270, 271 (N.D. Ill. 1996). Once the moving party informs the court of the basis of its motion and identifies the materials it believes demonstrate the absence of a genuine issue of material fact, the nonmoving party must oppose the motion with the evidentiary material listed in Rule 56(c). Dobiecki v. Palacios, 829 F. Supp. 229, 232 (N.D. Ill. 1993). Reliance on a "scintilla of evidence" in support of the non-moving party's position is not sufficient to successfully oppose summary judgment rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In this case, the undisputed material fact that Defendant obtained Plaintiff's consumer reports to attempt to collect an alleged utility debt from Xcel Energy, does not support Defendant's claim it had a permissible purpose to obtain Plaintiff's consumer reports under the FCRA. The FCRA allows a consumer reporting agency to furnish a consumer report to a person who intends to use the information to review or collect an account of the consumer. Defendant attempts to draw a similarity between the word "account" in 15 U.S.C. § 1681b(a)(3)(A) and an alleged outstanding debt from Xcel Energy, in spite of the clear statutory definition and case law. In *Pintos v. Pacific Creditors* Assoc., 504 F. 3d 792. (9 th. Cir. 2007) "The Court noted that this section does not provide that all "account collection" is a permissible purpose for obtaining credit reports." 504 F.3d at 798.

The FCRA and the FDCPA where both violated by Defendant as Defendant did not have a permissible purpose inquiring into Plaintiff's consumer credit reports, as collection of an alleged outstanding Xcel Energy debt is not one of the statutorily enumerated permissible purposes and is a false and misleading representation to collect or attempt to collect a debt.

## MOVANTS STATEMENT OF MATERIAL FACTS

1. Defendant purchased Plaintiff's account and initiated a review of Plaintiff's "consumer report information" from Experian. See, Plaintiff's Second Amended Complaint, ¶¶8 and 9.

2. Defendant admits it is a debt collection company that purchases accounts from creditors, like Xcel, and attempts to collect on those debts. See, Declaration of Deborah Everly, ¶4.

3. Defendant admits it purchased Plaintiff's alleged debt from Xcel as part of a bulk sale on May 18, 2006. See, Declaration of Deborah Everly, ¶6.

4. Defendant admits it inquired into Plaintiff's consumer credit history from Experian. See, Declaration of Deborah Everly, ¶7.

5. In Plaintiff's Request for Admissions No. 2, Plaintiff stated "Admit that the purpose of obtaining Plaintiff's consumer reports from Experian and Trans Union on multiple occasions was to attempt to collect on an alleged "account" in which you purchased evidence of debt."

6. In Defendant's Response to Plaintiff's Request for Admission No. 2, Defendant stated in part "After reasonable inquiry, Defendant has not been able to determine whether the Xcel Energy account is a "debt" as defined by 15 U.S.C. 1692a(5). Accordingly, Defendant is currently unable to admit or deny Request for Admission No. 2 after it completes its own formal discovery. At such time, Defendant will supplement its response to Request for Admission No. 2."

7. Defendant has had ample time to conduct its own formal discovery and supplement its response to Request for Admission No. 2 to Plaintiff, and has failed to do so in the 30-day time period allowed under FRCP Rule 36. a(3).

8. In Plaintiff's Request for Admission No. 5, Plaintiff stated "Admit that as a part of your standard operating procedure you routinely purchase evidence of debt of consumers and then obtain their consumer reports citing 15 U.S.C. 1681b(3)(A) as your "permissible purpose" for doing so, specifically quoting ".. or review or collection of an account of, the consumer".

9. In Defendant's Response to Plaintiff's Request for Admission No. 5, Defendant stated "Plaintiff fails to define "evidence". Accordingly, Defendant is currently unable to admit or deny Request for Admission No. 5. In addition, Defendant believes it will have the necessary information to respond to Request for Admission No. 5 after it completes its own formal discovery. At such time, Defendant will supplement its response to Request for Admission No. 5."

10. Defendant has had ample time to conduct its own formal discovery and supplement its response to Request for Admission No. 5 to Plaintiff , and has failed to do so in the 30- day time period allowed under FRCP Rule 36 a(3).

11. Defendant admits it inquired into Plaintiff's consumer credit history from Experian, as part of its reasonable efforts to collect Plaintiff's alleged outstanding debt. See, Declaration of Deborah Everly, ¶9.

12. Defendant admits its inquiry into Plaintiff's consumer credit history from Experian was used for no other purpose other than to assist with the collection of Plaintiff's alleged debt. See, Declaration of Deborah Everly, ¶10.

13. Defendant admits it inquired into Plaintiff's consumer credit history from Trans Union in November 2010. See, Declaration of Deborah Everly, ¶8.

14. Defendant admits it inquired into Plaintiff's consumer credit history from Trans Union as part of its reasonable efforts to collect Plaintiff's alleged outstanding debt. See, Declaration of Deborah Everly, ¶11.

15. Defendant admits the inquiry into Plaintiff's consumer credit history from Trans Union was for no other purpose other than to assist with the collection of Plaintiff's alleged debt. See, Declaration of Deborah Everly, ¶12.

16. Defendant admits repeatedly on the record that the alleged account it was attempting to collect was an alleged outstanding debt from Xcel energy. *See*, Docket No. 30, 34, and Declaration of Deborah Everly.

17. Defendant admits repeatedly on the record it was attempting to collect an alleged outstanding debt from Xcel energy which clearly is not a demand deposit, savings deposit, or other asset "account" as that term is defined by 15 U.S.C. § 1681a(r)(4).

18. The FCRA, 15 U.S.C. § 1681a(r)(4) defines the term "account" as follows:

The terms "account" and "electronic fund transfer" have the same meanings as in section 903 of the Electronic Fund Transfer Act.

19. Section 903 Definitions of the Electronic Fund Transfer Act, defines the term "account" as follows:

the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.

20. Plaintiff has never had any business dealings, debts, demand deposit, savings deposit, or any other asset "accounts" with, made application for credit from, made application for employment with, applied for insurance from, or received a bona-fide offer of credit from Defendant, as factually established by Plaintiff's affidavit attached hereto. ¶ 1

21. At no time has Plaintiff ever given his consent for Defendant to obtain his consumer reports from any credit reporting agency, as factually established by Plaintiff's affidavit attached hereto. ¶ 2

22. Plaintiff is not in receipt of anything, nor is there anything on the record made,
establishing the existence of a demand deposit, savings deposit, or other asset account of
Brian DeMaestri, that originated with Defendant or Xcel where there is any balance due
and owing that could give rise to a permissible purpose to be collected by Asset
Acceptance Capital Corp., as factually established by Plaintiff's affidavit attached hereto.
¶ 3

23. Plaintiff is not in receipt of anything, nor is there anything on the record made,  that
establishes Defendant has any right, title or interest to collect an "account" of Plaintiff as
that term is defined under 15 U.S.C. § 1681a(r)(4).¶ 4

24. Under the C.R.C.P., CHAPTER 13, SEIZURE OF PERSON OR PROPERTY, Rule
103. Garnishment, a person must possess a valid "Writ of garnishment with notice of
exemption and pending levy", in order to legally collect or attempt to collect a demand
deposit, saving deposit, or other asset account.

25. Plaintiff is not in receipt of anything, nor is there anything on the record made,
establishing the existence of a valid "Writ of Garnishment with Notice of Exemption and
Pending Levy" order authorizing it to collect or attempt to collect a demand deposit,
savings deposit, or other asset account of Brian DeMaestri, as factually established by the
Plaintiff's affidavit attached hereto. ¶ 5

26. Plaintiff's attached copies of its redacted consumer reports to its complaint as "Exhibit
A" and "Exhibit B" conclusively demonstrate Defendant obtained Plaintiff's consumer
reports on five (5) separate occasions, as factually established by the Plaintiff's affidavit
attached hereto. ¶ 8

27. In two (2) instances on October 30, 2010 and in one (1) instance on December 24, 2010 Defendant obtained Plaintiff's consumer report from Experian admittedly attempting to collect an alleged debt.

28. In two (2) instances in November 2010, Defendant obtained Plaintiff's consumer report from Trans Union admittedly attempting to collect and alleged debt.

## ARGUMENT

### A. Background - Recent Amendments to the FCRA Should Altogether Render Null and Void Section 1681b(a)(3)(A) as an Avenue for Most Debt Collection Efforts.

The FCRA is fundamentally a consumer protection law that stringently regulates the conditions under which a consumer report may be obtained and how that report may be used. The legislative intent was to protect individual privacy by broadly defining what a consumer report is and narrowly defining the situations in which it may be released and used. Assuring the confidentiality of this information has been the dominate theme of the FCRA's legislative history. *See, 15 U.S.C. § 1681(a)(4) (2000)* ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.").

The industry of bringing together personal information has exploded in recent years and doesn't seem to be showing any signs of slowing down. The biggest, nationwide credit bureaus, Equifax, Trans Union, and Experian (formerly TRW), alone generate over one billion consumer reports per year. Only an estimated 57.4 million reports go to the actual consumer that was the subject of the report, which brings to light the underlying issue that needs to be addressed. *See, NAT'L CONSUMER LAW CTR., FAIR CREDIT REPORTING 4 (6th ed. 2006).*

Recent amendments to the FCRA have brought into question the fundamental assumptions behind numerous cases that were favorable to debt collectors. In 2003, Congress adopted the Fair and Accurate Credit Transactions Act (FACTA) which amended the FCRA to add more consumer protections. Cases before 2003 which state "collection of a debt is a permissible purpose" are pre-FACTA Act decisions and should not be considered due to the fact that FACTA specifically defined terms such as "account", "credit", "credit transaction", etc. where the FCRA had not. *See, Pub. L. No. 108-159, 117 Stat. 1952 (codified as amended in scattered sections of 15 U.S.C. and 20 U.S.C.). See also, NAT'L CONSUMER LAW CTR., supra note 6, at 10-11.*

FACTA reformed the FCRA to contain more consumer protections and specifically the term "credit" is defined by citation to the Equal Credit Opportunity Act which states "'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefore [sic]." In addition, the term "account" has been specifically defined by citation to the Electronic Fund Transfer Act which describes an account as "a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title), as described in regulations of the Board, established primarily for personal, family, or household purposes." *See, 15 U.S.C. § 1681a(r)(4), § 1681a(r)(5), and § 1693a(2) (2000).*

The Federal Trade Commission (FTC) is the administrative agency that has influence to promulgate rules and regulations under the Act. In 1990, the FTC issued an Official Staff Commentary regarding the FCRA, and it has also from time to time

published Staff Opinion Letters highlighting its interpretation of the provisions, which are

not binding in Court but have been persuasive. The recent FACTA amendments have

further weakened the validity of the FTC's and current interpretations of the FCRA. *See,*

*§ 1681s-2(e) and FTC Official Staff Commentary, 16 C.F.R. pt. 600 app. (2007)*

  Only two of the twelve permissible purposes under FCRA, are especially relevant

to debt collecting agencies and this case. Therefore, they are the only provisions Plaintiff

will address. The applicable purposes can be generally characterized as follows:

collection of a consumer account and in connection with a consumer-initiated business

transaction. These regular descriptions are what generally appear in Court opinions.

However, the generality of these classifications is desperately imprecise when the exact

words of the statute are read as a whole.

  The most frequent, purpose referenced with respect to debt collection and this

case, allows for a consumer report to be used "in connection with a credit transaction

involving the consumer on whom the information is to be furnished and involving the . . .

collection of an account of, the consumer." This provision has historically been

understood to allow a debt collection agency to obtain a consumer report to collect a debt

related to a credit account, but not to collect a general business debt. *See, 15 U.S.C. §*

*1681b(a)(3)(A).*

  Courts have been unconstrained with their determinations that this purpose is only

valid when it relates to a credit transaction, and they have allowed this provision to be

used to collect on many types of debts without even discussing the "credit transaction"

language. For example, Courts have allowed consumer reports to be obtained to collect

on debts for medical services, debts caused by breach of a business contract that was

made subject to a mechanic's lien, college tuition debt, and debts that are not even specified.

However, in *Pintos v. Pacific Creditors* Assoc., "The Court noted that this section does not provide that all "account collection" is a permissible purpose for obtaining credit reports. Instead, this section is limited to collections on an account "in connection with a credit transaction involving the consumer."" *15 U.S.C. Section 1681b(a)(3)(A).* <u>*See,*</u> <u>*Pintos v. Pacific Creditors* Assoc.</u>, *504 F. 3d 792. (9 th. Cir. 2007), 504 F.3d at 798.*

Congress wanted to stringently confine access to this information by narrowly prescribing the conditions under which these reports may be distributed and used. Courts have not looked painstakingly enough at the limiting statutory language and have granted access to consumer reports in situations that Congress did not intend.

For good reason, Congress chose to limit the meanings of the terms by defining both "credit" and "account" within the FCRA itself.  However, only two cases to date have been declared that take into account the first of these reformed provisions and this case is the first and only case Plaintiff is aware of where a consumer has called upon the Court to take into account the second of these reformed provisions.

First, in *Miller v. Trans Union, L.L.C.*, the court emphatically rejected the judgment creditor theory in the context of court-ordered child support payments. The Northern District Court of Illinois held that the new definition of credit, which includes the *granting* of a right to defer payment, did not apply to court-ordered payments which did not have any element of a consensual transaction.  Moreover, it dismissed the FTC's interpretation as being decided prior to the 2003 amendments and "no longer persuasive." <u>*See,*</u> <u>*No. 06 C 2883, 2007 WL 641559, at \*1*</u> *(N.D. Ill. Feb. 28, 2007), Id. at \*5,  Id.*

The Court stressed that "individuals who do not consent to a transaction deserve greater, not lesser, privacy protections under the FCRA." Certainly, this opinion is fully consistent with the legislative intent of the FCRA to protect individual privacy while still allowing for ability of access to information where appropriate in credit transactions.

Shortly after *Miller v. Trans Union, L.L.C.* was decided, the Ninth Circuit Court of Appeals decided *Pintos v. Pacific Creditors Ass'n.,* and was of the same opinion. Specifically, the Ninth Circuit ruled "FACTA makes clear that debt collection is a permissible purpose for obtaining a credit report under section 1681b(a)(3)(A) only in connection with a 'credit transaction' in which a consumer has participated directly and voluntarily." This transaction did not satisfy the new definition of credit because it arose by statute and did not involve voluntary consumer participation. The Ninth Circuit also explicitly recognized that "[n]ot all 'debt' involves a 'credit transaction.'"

It is considerably perplexing that with all the convergence on FACTA's new definition of "credit," the Courts in *Miller* and *Pintos* failed to notice another new definition, that being the definition of the term "account." *See Id., (citing Cole v. U.S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004)* ("Many of the enumerated permissible purposes set forth in § 1681b are transactions initiated by the consumer; these purposes therefore do not create significant privacy concerns.")). *See also, 67 Id. at 796, Id. at 799, Id. See also, 15 U.S.C. § 1681(a) (2000).*

In the same way the transaction in *Pintos v. Pacific Creditors Ass'n.,* did not satisfy the new definition of "credit" because it arose by statute and did not involve voluntary consumer participation, and in the same way the Northern District Court of Illinois held that the new definition of credit, which includes the *granting* of a right to

defer payment, did not apply to court-ordered payments which lacked any element of a consensual transaction, the alleged Xcel Energy debt Defendant was attempting to collect in this case does not satisfy the new definition of the term "account" under FACTA as it is admittedly not "a demand deposit, savings deposit, or other asset account [including credit cards with regular balances] . . . established primarily for personal, family, or household purposes", accordingly, the court should make a similar ruling in this case.

Reading the two definitions together leave a permissible purpose open only to valid creditors who become so by consent of the consumer debtor and who are seeking to collect specifically on a personal savings, checking or other type of bank account.

For the aforementioned reasons and with no court or FTC explanations on this provision to date, this confined definition in conjunction with the *Miller* and *Pintos* line of reasoning should altogether render null and void section 1681b(a)(3)(A) as an avenue for most debt collection efforts.

## B. Plaintiff Raises a Genuine Issue and Points to Defendants Admissions on Record as Material Fact

Even if Defendant's contention that "Plaintiff fails to raise a genuine issue to any material fact" had merit, which Plaintiff adamantly disputes, Defendant admits on the record its purpose for obtaining Plaintiff's consumer reports was to attempt to collect an alleged outstanding Xcel Energy debt, which is an outright admission of guilt. Plaintiff's allegations may have appeared conslusory in Defendant's view, however Defendant has conclusively established them as fact on and for the record. "Collection of an outstanding Xcel debt" is not listed as one of the meanings of the term "account" as that term is defined by 15 U.S.C. § 1681a(r)(4). Defendant's Admissions and the very facts it relies upon in attempting to establish a "permissible purpose" to obtain Plaintiff's consumer

reports, conversely prove it did not in fact have a statutorily enumerated "permissible purpose" to obtain Plaintiff's consumer report on multiple occasions. As such Defendant has admitted its guilt on the record and proven Plaintiff's case.

Defendant admits on the record it was attempting to collect an alleged outstanding debt from Xcel energy which undoubtedly, is not a demand deposit, savings deposit, or other asset "account" as that term is defined by 15 U.S.C. § 1681a(r)(4). As stated above, "Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." _See, Celotex Corp., 477 U.S. at 323-24 (1986)._

Rule 56(c)(4) states an affidavit or declaration used to support a motion for summary judgment must be made on personal knowledge, based on facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. _See, Fed.R.Civ.P. 56(c)(4)._

Plaintiff provides this Court with an Affidavit attached hereto. Plaintiff provides this Court with an Affidavit made on personal knowledge, based on the fact that Defendant has admitted to obtaining Plaintiff's consumer reports in an attempt to collect an outstanding Xcel Energy debt, thereby admitting to the lack of a statutorily enumerated "permissible purpose" to obtain Plaintiff's consumer reports, which is a fact that would be admissible in evidence and Plaintiff is competent to testify on the matters stated.

While Plaintiff disagrees with Defendant's assertion that "Defendant submits that Ms. Everly's declaration is sufficient to shift the burden to Plaintiff to point to facts in the

record which contradict Ms. Everly's declaration", Plaintiff complies and points to the fact that Defendant has proven Plaintiff's case by openly admitting, repeatedly on the record, and establishing the material fact it obtained Plaintiff's consumer reports to attempt to collect an alleged outstanding Xcel debt. Alleged outstanding Xcel debts are not listed under the statutorily enumerated definition of the term "account" in the FCRA, as explained above. Defendant has admitted to the allegations contained in Plaintiff's pleadings and is guilty as charged.

### C. Permissible Purpose

Collection of a debt is not a "permissible purpose" to obtain a consumer report under 15 U.S.C. § 1681b(a)(3)(A). Defendant has not entered into the record any proof or documentation of the existence of a **demand deposit, savings deposit, or other asset account** of Brian DeMaestri that would have allowed for "review of an account" to obtain its consumer reports on multiple occasions. Section 1681b(a)(3)(A) of the FCRA provides a consumer reporting agency may furnish a consumer report under the following circumstance:

(3) To a person which has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an "account" of the consumer. 15 U.S.C. § 1681b(a)(3)(A).

Section 1681a(r)(4) of the FCRA defines the term "account" as follows:

(4) The terms "account" and "electronic fund transfer" have the same meanings as in section 903 of the Electronic Fund Transfer Act.

Section 903. Definitions of the Electronic Fund Transfer Act defines the term "account" as follows:

the term "account" means **a demand deposit, savings deposit, or other asset account** (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.

**Expressio unius est exclusio alterius.** The Term "debt" is not synonymous with the term "account" under 15 U.S.C. § 1681b(a)(3)(A). Congress does not do a vain and useless thing. Congress says in a statute what it means and means what it says there. Congress provides a statutory definition to supersede, not enlarge, the common or ordinary dictionary definition of a word. If congress took the time to define a term, then they did so for a reason.

"We must assume that the legislature did **not** intend to do a vain and useless thing."

*Williams v. Commonwealth, 190 Va. 280, 293, 56 S.E.2d 537, 54 (1949)(Emphasis added).*

"In interpreting a statute a court should always turn to one, cardinal canon before all others.... [C]ourts must presume that a **legislature says in a statute what it means and means in a statute what it says there.**" *Connecticut Nat'l Bank v. Germain, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)(Emphasis added).*

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 109 S. Ct. 2166, 2172 (1989)*

"When a statute includes an explicit definition, **we must follow that definition**, even if it varies from that term's ordinary meaning." _Stenberg v. Carhart, 530 U.S. 914, 942, 120 S.Ct. 2597, 2615 (2000)(Emphasis added)._

"It is axiomatic that the statutory definition of the term **excludes unstated meanings of that term**" _Meese v. Keene, 481 U. S. 465, 484-485 (1987) (Emphasis added)._

". . .Statutory definitions control the meaning of statutory words, . ." _Lawson v. Suwannee Fruit & Steamship Co., 336 U.S. 198, 201 (1949)._

"As a rule, `a definition which declares what a term "means" … **excludes any meaning that is not stated'** " _Western Union Telegraph Co. v. Lenroot, 323 U. S. 490, 502 (1945)(Emphasis added)._

"[A] definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions **to apply it to the exclusion of all others**." _Fox v. Standard Oil Co. of N. J., 294 U. S. 87, 95-96, 55 S.Ct. 333, 336 (1935)(Emphasis added)_

**"Expressio unius est exclusio alterius**. A maxim of statutory interpretation meaning that **the expression of one thing is the exclusion of another.** _Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325; Newblock v. Bowles, 170 Okl. 487, 40 P.2d 1097, 1100(Emphasis Added)._

### D. The Legislative Intent of the FCRA

Congress enacted the FCRA to promote efficiency in the Nation's banking system and to protect consumer privacy, not to provide debt collectors who routinely purchase alleged outstanding consumer debts, with a means to freely access consumers' credit profiles to determine the value of the evidence of debt they purchased or to collect or attempt to

collect a debt, or for any other purposes other than those specifically defined under 15 U.S.C. § 1681a(r)(4).

"Congress enacted the FCRA in 1970 to **promote efficiency in the Nation's banking system and to protect consumer privacy**. As relevant here, the Act seeks to accomplish those goals by requiring credit reporting agencies to maintain reasonable procedures designed to assure maximum possible accuracy of the information contained in credit reports and **to limit the furnishing of such reports to certain statutorily enumerated purposes**." *TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001) (Emphasis added).*

"In construing the scope and effect of a statute, [the court must] seek out the intent of the legislature in voting its passage. Perhaps the best guide to intent is declaration of policy which frequently forms the initial part of an enactment". *St. Luke's Hosp. v. Industrial Comm'n, 142 Colo. 28, 32, 349 P.2d 995, 997 (1960), § 602. Congressional findings and statement of purpose 15 U.S.C. § 1681(b).*

"When interpreting statutes, our primary task is to give effect to the intent of the general assembly and the purpose of the legislative scheme. *Id. (citing People v. Yascavage,101 P.3d 1090, 1093 (Colo. 2004); Klinger, 130 P.3d at 1031).* In doing so, we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all its parts. *People v. Williamson, 249 P.3d 801, 803 (Colo. 2011) (citing People v. Luther, 58 P.3d 1013, 1015 (Colo. 2002)).* Ignoring the statutory definition and interpreting the term "account" to include meanings other than those specifically defined by congress, would **neither** give effect to the intent of the general assembly, nor consistent, harmonious, and sensible effect to all its parts.

### E. The Language of the FCRA is Unambiguous, Clear, and very Straightforward

The language of the FCRA 15 U.S.C. § 1681b(3)(A) is unambiguous, clear and very straightforward, therefore there is no need to resort to legislative history to cloud a statutory text that is clear. The FCRA clearly defines an "account" and, most debts do not meet the criteria in the definition under 15 U.S.C. § 1681a(r)(4) to allow a permissible purpose to obtain a consumer report. There is no need to resort to legislative history to cloud a statutory text that is unambiguous, straightforward and clear.

"As we have repeatedly held, the authoritative statement is the **statutory text, not the legislative history** or any other extrinsic material." _Exxon Mobil Corp. v. Allapattah Servs., Inc._, _545 U.S. 546, 546 (2005)(Emphasis added)_

"Where the language of a statute is unambiguous, as it is here, **we need not, and ought  not, consider legislative history.**" _United States v. Gonzales, 520 U.S. 1, 6, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997)(Emphasis added)._

"Given the straightforward statutory command, there is **no reason to resort to legislative history.**" _Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149-1150, 117 L.Ed.2d 391 (1992)(Emphasis added). Also, Harris v. Garner, 216 F.3d 970, 976 (11th Cir.2000)(en banc)._

"When the import of the words Congress has used is clear, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.") Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, "**we do not resort to legislative history to cloud a statutory text that is clear**" _Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655,  662, 126 L.Ed.2d 615 (1994)(Emphasis added)._

Regardless of its clarity or specificity, we do not give legislative history more weight than unambiguous statutory language because **"[t]he statutory language itself is the principal battlefield** where the warring interests struggle against each other, and **it is to that battlefield we should look for the results of the battle."** *CBS, Inc. v. PrimeTime 24 Joint Venture, 245   F.3d 1217, 1229 (11th Cir.2001)(Emphasis added), CBS, Inc., 245 F.3d at 1228.*

### F. No Valid Writ of Garnishment Order

Under the C.R.C.P., CHAPTER 13, SEIZURE OF PERSON OR PROPERTY, Rule 103. Garnishment, and every other state and federal law, a person must possess a valid "Writ of Garnishment with Notice of Exemption and Pending Levy", in order to legally collect or  attempt to collect a demand deposit, saving deposit, or other asset account of a consumer.

Defendant has not provided Plaintiff nor the Court with a valid "Writ of Garnishment with Notice of Exemption and Pending Levy" order authorizing it to collect or attempt to collect a demand deposit, savings deposit, or other asset account of Brian DeMaestri, as factually established by the Plaintiff's affidavit attached hereto. ¶ 5

### G. Plaintiff's FDCPA Claim

As described above, Defendant's inquiries into Plaintiff's credit history were not made pursuant to a permissible purpose. Plaintiff does allege the additional fact that, Defendant has openly stated, repeatedly on the record, that it obtained Plaintiff's consumer reports to attempt to collect an alleged outstanding Xcel debt. It is unfair for a person to falsely represent the nature of the type of account it is attempting to collect, by attempting to draw a similarity between the term "account" in 15 U.S.C. §

1681b(a)(3)(A) and an alleged outstanding debt from Xcel Energy, in spite of the clear statutory definition. This supports the claim that Defendant used false representation or deceptive means to collect or attempt to collect the alleged Xcel debt.

### H. Defendant's Actions are Multiple, Reckless, Intentional and Willful

In Plaintiff's Request for Admissions to Defendant, Request for Admission No. 5, Plaintiff requests Defendant "Admit that as a part of your standard operating procedure you routinely purchase evidence of debt of consumers and then obtain their consumer reports citing 15 U.S.C. 1681b(3)(A) as your "permissible purpose" for doing so, specifically quoting ".. or review or collection of an account of, the consumer".

In Defendant's response to Plaintiff's Request for Admission No. 5, Defendant states "Plaintiff fails to define "evidence". Accordingly, Defendant is currently unable to admit or deny Request for Admission No. 5. In addition, Defendant believes it will have the necessary information to respond to Request for Admission No. 5 after it completes its own formal discovery. At such time, Defendant will supplement its response to Request for Admission No. 5."

Defendant has had ample time to conduct its own formal discovery and failed to supplement its response to Request for Admission No. 2 and its response to Request for Admission No. 5, to Plaintiff. Failing to respond in the 30-day time period allowed under FRCP Rule 36 a(3) deems Plaintiff's Request for Admission No. 2 and Request for Admission No. 5, ADMITTED.

By routinely representing and certifying that it is attempting to collect an alleged "account" of consumers', which in reality are not accounts as defined by 15 U.S.C. §

1681a(r)(4) but rather outstanding consumer debts, Defendant has obtained Plaintiff's consumer reports under false pretenses or knowingly without a permissible purpose.

Routinely purchasing debts then rashly obtaining the consumer reports of the alleged debtors in an attempt to collect the alleged debts, while deliberately remaining ignorant of the statutorily enumerated permissible purposes in which allow a person to obtain consumers' consumer credit reports, is a blatant, intentional, willful, reckless and unreasonably careless action in complete disregard for the law and the privacy of consumers.

The Defendant regularly violates the FCRA and the FDCPA. A quick search of the U.S. Judiciary's PACER - National Case Locator/ Case Index lists the Defendant as party to well over 4,000 cases filed against it in the United States District Courts for violations of the FCRA and the FDCPA.

It is no matter that Plaintiff has suffered no actual damages in this case, as Defendant has violated the law and Plaintiff's privacy and in doing so has subjected itself to the consequences and liability that entails.

"... no "actual harm" need be proved in an action under § 1681m(a) because "Congress ... has stated in plain terms that statutory damages are available as an alternative remedy to actual damages"", "... the availability of statutory damages under the Fair Debt Collection Protection Act, 15 U.S.C. § 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."" *See, Beaudry v. TeleCheck Services, Inc., 579 F. 3d 702 - Court of Appeals, 6th Circuit 2009*

The FCRA allows for recovery of the greater of the consumer's

actual damages or statutory damages of $1,000 when the report is obtained under false

pretenses or knowingly without a permissible purpose. *See*, 15 U.S.C. § 1681n(a)(1)(B).

For the foregoing reasons there can be no question as to whether or not Defendant

obtained Plaintiff's consumer report under false pretenses. There is no excuse for

Defendant's blatant disregard for the law, nor is ignorance of the law an excuse.

"We have long recognized the common maxim, familiar to all minds, that

ignorance of the law will not excuse any person, either civilly or criminally." *See, Jerman*

*v. Carlisle, 538 F.3d 469, 471 (6th Cir. 2008)*

Through all of the decisions, dissents and discourses, occurring in the Courts

overtime, one Latin maxim, *ignorantia legis neminem excusat,* has escaped almost

unscathed. Sometimes also given as *ignorantia juris non excusat, e.g.,* Keedy, *Ignorance*

**and** *Mistake in the Criminal Law,* 22 HARv. L. REv. 75, 77 (1908), the maxim declares

that ignorance of the law excuses no one *(neminem excusat)* or simply does not excuse

*(non excusat).*

## CONCLUSION AND REQUEST FOR RELIEF

In determining whether Defendant had a valid permissible purpose to obtain

Plaintiff's consumer reports, taking into account the fact that the FCRA defines the term

"account" in general as a "demand deposit, savings deposit, or other asset account", in

addition to the fact Defendant admits on the record the account type it was attempting to

collect was an outstanding utility debt from Xcel Energy, which is obviously not a

demand deposit, savings deposit, or other asset account, the only reasonable conclusion

can be that Defendant did not have a permissible purpose to obtain Plaintiff's consumer

report on the five (5) occasions it obtained them. The summary judgment standard

mirrors the directed verdict standard under Fed. R. Civ. P. 50(a), which requires the court

to grant a directed verdict where "there can be but one reasonable conclusion". Esdale v.

American Mut. Ins. Co., 914 F. Supp. 270, 271 (N.D. Ill. 1996).

**WHEREFORE,** for the aforementioned reasons Plaintiff respectfully requests

this honorable court DENY Defendant's Motion for Summary Judgment, GRANT

Plaintiff's Motion for Summary Judgment and issue an ORDER in favor of the Plaintiff,

awarding the following damages:

1. Statutory damages in the amount of $6,000 under 15 U.S.C. §

1681n(a)(1)(B) and 15 U.S.C. § 1692k(a)(2)(A),

2. Costs of this action in the amount of $1,000 pursuant to 15 U.S.C. §

1681n(a)(3) and 15 U.S.C. § 1692k(a)(3), and,

3. Such other and further relief as the Court deems just and proper.

Dated: 02/13/12
Respectfully submitted,

Brian DeMaestri,
9901 E. Evans Ave. #23D
Denver, CO 80247

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the document above was mailed USPS first
class mail to the person(s) listed below:

Joseph J. Lico, Esq.
621 Seventeenth Street, Suite 1800
Denver, Colorado 80293

Plaintiffs Original Signature